All right, Mr. Genob, the court appreciates your willingness to accept the appointment under the Criminal Justice Act in this case, and we'll hear from you first. Thank you, Your Honor. May it please the court, counsel, I'm John Genob from Kansas City representing appellant Guadalupe Urbina-Rodriguez. Excuse me a second, just counting. I don't have Mr. Genob's picture on my screen. Do you ever, are you able to see him? I can see him, but we'll wait a minute until you can look for him. He shows up on my participants list under his name. Yeah, I have him pinned. All right, go ahead. I can hear him, so go ahead. Can you see him, Judge Kelly? I can see him, but I cannot see Mr. Hurst, so I have the opposite problem. Judge Malloy and Judge Kelly, our IT That did not work, but I was able to hear Mr. Hurst, so I can proceed. I'm fine with going as is. That worked for me. I now can see Mr. Genob. All right, Mr. Genob, all three of us can see you, so you're on the big stage. Technology is wonderful. Thank you, Your Honors. The issue in this appeal relates to the sufficiency of evidence on count two, which is possession of a firearm in furtherance of a drug trafficking offense. The case went to jury trial. He was convicted on count one of possession with intent to distribute a drug trafficking offense. That conviction is not challenged on appeal. He was convicted in count three of felon in possession. That conviction is not challenged on appeal. The conviction that is challenged requires a connection between the drug trafficking offense and the possession of the firearm, and specifically, it requires that the possession of the firearm was in furtherance of the drug trafficking offense. This means that the government has to present evidence from which a reasonable trier of fact could find a nexus between the possession of the firearm and the drug crime, such that the possession had the effect of furthering, advancing, or helping forward the drug crime. Importantly, and a very important corollary, is that simultaneous possession of the drugs and the firearm by itself is insufficient to sustain the conviction on count two. But at the end of the day, that is all that the government proved at trial. What happened is, and the evidence is uncontroverted on this, Mr. Urbina Rodriguez was sitting in his yard. He had his varmint rifle with him. He did that every day. There was testimony not only from him, but from two other witnesses at the trial, that that was his standard behavior. In fact, it was so standard that it was kind of a joke, that he was always out there, and he was always trying to keep varmints away with his varmint rifle. What about his conversation with the officer right after the delivery of the package, where he told the officer, well, I have this for protection and stuff, I think was the phrase, and didn't follow up with the explanation that then came out at trial. Could a jury use that to sort of disbelieve his presentation of his version at trial, since he didn't say it at the time? That's an excellent question, Judge, and I think that what you've done is raised the government's strongest argument on the appeal. But I think the answer to the question is no, and the reason for it is this. The case did go to trial, and there was the entire record of the case has only one explanation for the question, protection from what? And that explanation is protection from varmints. Now, certainly, there's no question in my mind, anyway, that had the government chosen to do so, it could have offered Houdyshell or, you know, any experienced narcotics detective to testify as to the well-known link between drug trafficking and firearms, and that that is a very common thing, that drug traffickers would have a firearm to protect their drug proceeds, to protect their drugs, and they certainly could have offered that evidence. Now, I'm not saying that evidence would have necessarily convicted him, but it certainly could have. It would have provided a basis for a different conclusion with respect to the protection from what question. Now, obviously, that person would have been subject to cross-examination, and one of the things that is interesting about the case, and would have certainly been a topic of cross-examination, is that this was a varmint rifle, and, you know, this wasn't a 9mm, this wasn't a Glock, but the point is it didn't happen, and the only evidence in the case as to why he kept the firearm was to protect his chickens from varmints. When the government cross-examined those witnesses that the defense put on, was there a challenge to the veracity of that information, the credibility of those witnesses as to that testimony? Not at all. No challenge whatsoever, and frankly, you know, at least one of those witnesses was completely neutral. I mean, he was just a neighbor who lived three or four parcels down the road, but that's the heart of the problem here, is that simple possession of both is not enough, and so what we get in the case law, and I apologize, I spent too much time talking about that, so I have to move kind of faster, but what we get in the case law, then, is exactly that. When you find the guns in close proximity, and they're easily accessible, government brings on an expert to testify to a nexus, standard procedure. Didn't happen here. The other thing that happens in these cases is we get testimony, either from a cooperating co-defendant or from customers, typically, that the defendant used the drug, that used the gun on other occasions, to facilitate drug trafficking. Either he would have the gun with him during sales, or would take it when traveling to go do a purchase, or whatever, but there would be testimony like that, and all of the cases, every single one cited by both parties in the briefing has one or both of those things. This case has neither. So, well, Mr. Genob, on the varmint issue, yes, a rational jury accept that testimony is true, but conclude that the gun was a dual purpose weapon for protection from both varmint and persons who might be a threat to the drug trade? Certainly, certainly, but they didn't have a basis to do so in this case. There's no doubt that he had... Why not, if they had the admission about protection and the gun loaded and accessible in proximity to the valuable drug shipment? Well, there's a couple of things on that, Judge, and I'll try to go as quickly as I can. One is the evidence is uncontroverted. He was not expecting a package that day. So he was not out there to protect drugs. They searched the house. There's nothing, no drug paraphernalia, no large amount of cash, nothing, absolutely nothing. Then he's out there with his varmint rifle. He is not expecting a delivery. Well, then they show up within a minute after that and arrest him. So there's no basis to say that he had that gun to protect those drugs, because he wasn't even anticipating receiving them. Now, as far as the dual purpose, yes, you could have a dual purpose, no question about it, but the jury was not given any alternate purpose, none. There was no evidence of any other purpose for having that gun. All they had to do was offer Houdyshell, who took that statement, or anyone else to say, well, what would make sense? What would be a legitimate reason that a person would want protection? Well, gee, it would be to protect their drugs, protect their proceeds and all that, but there was no evidence of that. That is not in the record anywhere. And I'll save the rest of my time if that's okay. I just have a another question. You're welcome to reserve the balance. Thank you for your argument. Mr. Hurst, we'll hear from you. Thank you, your honor. May it please the court, Ben Hurst for the United States. A rational jury could have concluded the defendant kept the rifle loaded within arm's reach in order to protect the only valuable thing that was available to him at the And we're not here to discuss, I know that the defendant has an argument about how he wasn't expecting the drugs to be delivered that day, but that's kind of in some way beside the point because the defendant is not challenging the jury's conclusion that the defendant possessed those drugs with intent to distribute them or the evidence that the drugs were in fact worth $43,000. And the furthest that this court needs to go here is a quote from Sadler. We have this is we have repeatedly held that a jury may find the requisite nexus when a firearm is discovered in close proximity with drugs. So is the support and inference of the firearm is for the protection of the drugs. I hear the defendant's argument about the fact that simultaneous possession is not enough. And I think there's a real distinction to be drawn between simultaneous possession, as this court considers possession and possession within close proximity. Possession can be actual or it can be constructive. And the court, and when it's talking about simultaneous possession, isn't enough. They could be talking about possession constructive in my house, in my hunting safe, in my cabin, wherever, while I'm out selling drugs, doing hand-to-hand transactions without the gun. And that case is not this case. This is the case where the defendant is receiving the drugs. And the only thing that's around him is he's sitting outside. There's a rifle leaning up against the tree. It's loaded. And then he's sitting in the chair and the $43,000 of drugs are sitting next to him. And I think it's important to recognize that there's a background information that the jury has here that we haven't discussed a lot. We have the defendant has a prior conviction or two for drug distribution. And in one of those circumstances, the jury heard that defendant premises were searched and they found drug paraphernalia, drug distribution paraphernalia, and a rifle in the same location. The jury also knew, as it was instructed, that it's illegal for the defendant to possess a rifle. So what he has is a rifle he's not allowed to possess, methamphetamine, $43,000 worth that he's not allowed to possess. And the jury knows another thing that they can infer that it can use common sense to find, which is that $43,000 is a lot of value. That's a large amount of money. And that because methamphetamine is illegal to possess, it's going to be difficult to insure that property in the normal ways you might with legal property by an insurance policy or recovering it by tort claims or calling the police. And these are all things that would support an inference. The reason that one keeps a firearm next to one's $43,000 of methamphetamine is for exactly the reason that the defendant gave when he was questioned by police on that day, which is for protection. Mr. Hurst, if I understood earlier in your argument, you said that it wasn't really important that he didn't know the package was arriving. Why isn't that important? Because it seems to me if he doesn't know the package is arriving, then you have, I guess, is it just a minute between the time of delivery and the time that they approached him? Is that accurate, Your Honor? If it's not exactly, it's very close. It's close. So why isn't that fact relevant in what inferences a jury could make without additional evidence about whether that gun was there to protect what I think everybody concedes is a valuable package? Well, Your Honor, I would say there's several pieces of information I would give you to consider when you're weighing how valuable that is. One thing is the defendant told the officers when he arrived that he receives packages monthly, or he had received several packages. And the jury also heard evidence that during this period of April to, I'm going to misstate it, it was some period of months less than a year during 2018, 12 packages from California were delivered from California to the defendant's residence. So that the defendant maybe wasn't expecting a package on that particular day, and we don't have that exact evidence, then it doesn't mean he didn't expect packages on a regular. But I'll give you the second piece of information, Your Honor, that the package was set to be delivered on the day before. So if the defendant wasn't expecting to receive it on the day of the 31st, that it was set to be delivered on the 30th. Now, I can't point you to the record where the defendant testifies he was expecting the package. I can't give you that. But is that in the record that the defendant was expecting the package the day before? No, Your Honor, I don't want to misspeak on that. Okay. The inference that would have to be, I'm sorry. No, go right ahead, finish. The inference you would have to make is the evidence in the record is that the package was set to be delivered on the 30th, and that the knowing that it was coming. But that's an inference they would have to draw. It's not, I can't point you to the record testimony for that. Well, am I remembering the record correctly that the defendant received this package at his front door from the delivery person? No. I believe the testimony, Your Honor, is that the defendant walked, that the postal inspector walked about halfway up the driveway, and the defendant met him there to receive the package. And then where was he found with the package and the gun? Where was that in relation to the place where he received the package from the postal deliveryman? I believe both those locations were in front of the house, Your Honor. In the front yard, there's the tree, and there's the location with the two chairs. And I point the court to the with our brief where the chart or table that shows the locations of everything was introduced in the evidence at trial, and that's an exhibit that we attached to our addendum. I'd further offer one additional piece of information with respect to the, with respect to the jury's, how can the jury draw the inference that he's protecting anything other than the chickens? And the one thing the jury knows is that it's illegal for him to possess a firearm. That means it's a risky thing for him to do. Should he spend, is that the sort of thing that one, the sort of risk that one would take to protect chickens, or is it the sort of risk one takes to protect a $43,000 worth of a substance that's illegal for you to possess? I think that's a reasonable jury to come to the conclusion the reason he's got the firearm there is to protect the drugs. And the one additional point on that, Your Honor, is that you can look around him, and there are pictures that we've also included in our addendum. There's nothing else there for him to protect. When he tells the officer, well, I'm doing it for protection, and the officer asks him, well, what did you need protection for? And the officer testified at trial that he wasn't able to tell you what he needed protection for. Well, what is, look around at what he's got with him. What has he got there to protect? He's got $43,000 of methamphetamine, two folding chairs, and himself. There's nothing else around him. There's the testimony, Mr. Jernob will correct me if I'm wrong, but the testimony at trial was that the chickens were in the backyard, and he was in the front yard. And I'll say, there's a couple other points that Mr. Jernob mentioned. I didn't see them in the record. He can maybe point you to them. My understanding from the record testimony that he was outside every day, or outside all the time, was that he was outside all the time or outside every day. But what I heard Mr. Jernob say was that he was outside with the gun every day. And I don't believe that there's testimony in the record that he always had a gun with him when he was outdoors. I think that's an important consideration. I also, the suggestion that there's testimony that this is a varmint rifle, that's not. There's testimony that he had a rifle. There's testimony that he would use a rifle to recognize. The thing about a rifle is that you can possess the same rifle at the same time and protect multiple things. So in order for the defendant's supposition that the only thing the jury could find, a rational jury could find, is that he had it to protect chickens, is inconsistent with the jury's recognition that a jury or a defendant can hold a rifle and protect chickens and at the same time protect $43,000 in methamphetamine. The further thing I'll say about that is that the jury was not required to accept the defendant's self-serving testimony that he only possessed the rifle for purposes of protecting his chickens, especially in light of various inconsistencies in the defendant's testimony between when officers met him and he says, I receive packages for Jose, he pays me on the 20th of every month, I assume it's to get the packages. And when he testifies at trial and says, no, I never got a package for Jose. These are inconsistencies the jury was entitled to weigh in deciding whether to credit part of what the defendant said about protection and the fact that the defendant's trial testimony was more complete in a self-serving way. So I see my time has expired. I want to offer, if the judges have any questions for me, I'm happy to answer them. I just ask the court to affirm. Very well. Thank you for your argument. Mr. Jnab, we'll hear from you in rebuttal. Thank you, Judge. The fact is there wasn't any testimony from the government as to reason for having the firearm. The government is saying that the jury could find this, but they never offered the jury the basis to find it. What the court has held in many, many cases is the jury may infer that the firearm was used in furtherance of a drug crime when it is kept in close proximity to the drugs, it is quickly accessible, and there is expert testimony regarding the use of firearms in connection with the drug trafficking. They didn't provide that evidence in this case. What Mr. Hearst's argument boils down to is simply simultaneous possession. Simultaneous possession that was engineered by the delivery. The drugs are delivered and boom, within a minute, he's arrested. There was no controversy. About the location, didn't he have the option as to where to go after he received the package? If he felt unsafe? I could have a second. I'm out of time, but I'd love to respond to that. Oh, I want you to respond, but let me just finish the question. I'm wondering whether it's a fair inference for a jury to say, well, he chose to take the package and go to the location where the gun was located as opposed to somewhere else, and that's relevant to whether the gun was for protection. Say the gun had not been outside and he received the package, maybe he would have taken it inside. We don't know. Go ahead. The evidence was that, and it's not completely clear, but it was certainly accepted by the government in closing, that when the drugs were sitting out in that chair with the gun, and that when he got the package, he simply returned to that chair. So it's not like he was inside and came out to get the package and then walked outside with the gun. I think that the evidence is pretty clear that he was out there beforehand and all he did was return to the seat he had already been sitting in. So I think it's awfully, awfully difficult to say from that, that that reaction would have been any different if he had received junk mail or if he had received, you know, a letter from his mom. Okay, thank you for addressing that. Thank you both, counsel, for your arguments. The case is submitted and the court will file an opinion in due course.